**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| STEWART LUCAS MURREY,<br>Plaintiff,<br>v.<br>COUNTY OF SAN DIEGO *et al.*,<br>Defendants. | Case No. 26-cv-02327-BAS-VET<br><br>**ORDER:**<br>**(1) GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS (ECF No. 2); AND**<br>**(2) DISMISSING PLAINTIFF'S FIRST AMENDED COMPLAINT (ECF No. 20)** |

For the reasons below, the Court **GRANTS** Plaintiff's Motion for Leave to Proceed in Forma Pauperis. (ECF No. 2.) However, the Court **DISMISSES** Plaintiff's First Amended Complaint ("FAC"). (ECF No. 20.)

## I. MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS

Under 28 U.S.C. § 1915, a litigant who because of indigency is unable to pay the required fees or security to commence a legal action may petition the court to proceed without making such payment. The determination of indigency falls within the district court's discretion. *Cal. Men's Colony v. Rowland*, 939 F.2d 854, 858 (9th Cir. 1991) (holding that "Section 1915 typically requires the reviewing court to exercise its sound discretion in determining whether the affiant has satisfied the statute's requirement of

indigency”), *rev’d on other grounds*, 506 U.S. 194 (1993). It is well-settled that a party need not be completely destitute to proceed in forma pauperis (“IFP”). *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339–40 (1948). To satisfy the requirements of 28 U.S.C. § 1915(a), “an affidavit [of poverty] is sufficient which states that one cannot because of his poverty pay or give security for costs . . . and still be able to provide himself and dependents with the necessities of life.” *Id.* at 339. At the same time, however, “the same even-handed care must be employed to assure that federal funds are not squandered to underwrite, at public expense . . . the remonstrances of a suitor who is financially able, in whole or in material part, to pull his own oar.” *Temple v. Ellerthorpe*, 586 F. Supp. 848, 850 (D.R.I. 1984). Finally, the facts as to the affiant’s poverty must be stated “with some particularity, definiteness, and certainty.” *United States v. McQuade*, 647 F.2d 938, 940 (9th Cir. 1981).

Here, the Court concludes that Plaintiff has provided sufficient information to show Plaintiff is unable to pay the fees or post securities required to maintain this action. Plaintiff currently works as an independent contractor and receives $2,000.00 in compensation monthly. (*See* ECF No. 2.) Plaintiff’s total monthly expenses amount to $2,520.00—exceeding his household’s monthly income by $520.00. (*Id.*) Additionally, Plaintiff only has $94.12 in his bank account. (*Id.*)

The Court therefore **GRANTS** Plaintiff’s motion for leave to proceed in forma pauperis. (ECF No. 2.)

## II. SCREENING

### A. Legal Standard

Notwithstanding payment of any filing fee or portion thereof, a complaint filed by any person proceeding *in forma pauperis* pursuant to 28 U.S.C. § 1915(a) is subject to a mandatory and *sua sponte* review and dismissal by the court to the extent it is “frivolous, malicious, fails to state a claim upon which relief may be granted, or . . . seeks monetary relief against a defendant who is immune from such relief[.]” *Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc). 28 U.S.C. § 1915(e)(2) mandates that the court

reviewing a complaint filed pursuant to the IFP provisions of § 1915 make and rule on its own motion to dismiss before directing that the complaint be served by the U.S. Marshal pursuant to Federal Rule of Civil Procedure 4(c)(3). *Lopez*, 203 F.3d at 1127 ("[S]ection 1915(e) not only permits, but requires a district court to dismiss an in forma pauperis complaint that fails to state a claim."); *see also Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998) (noting that "the language of § 1915(e)(2)(B)(ii) parallels the language of Federal Rule of Civil Procedure 12(b)(6)"). Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

**B. Background**

In the First Amended Complaint ("FAC"), Plaintiff brings claims against County of San Diego, City of San Marcos, and their employees, including: a deputy named Isaac Padilla ("Deputy Padilla"), Psychiatric Emergency Response Team ("PERT") clinician and licensed marriage and family therapist named Warren Basile ("Therapist Basile"), a deputy named Hannah Rost ("Deputy Rost"), and Doe Officers 4–10. (*See generally* FAC, ECF No. 20.)

As best as the Court can ascertain from the FAC, this is a family dispute between Plaintiff Stewart Lucas Murrey and his sister Melissa Mazzola ("Mazzola") involving the Murrey Family Trust ("the Trust"). (FAC ¶¶ 1, 3, 13.) Their 76-year-old mother, Karen Murrey, who formed the Trust with her now-deceased husband (also Plaintiff's father), is still alive but cognitively impaired with Alzheimer's. Plaintiff and his sister were, at the time of the events at issue, co-successor Trustees of the Trust and co-holders of a power of attorney for their mother, and equal beneficiaries of the Trust, though Plaintiff alleges that instruments executed in October and December 2025 stripped him of those fiduciary roles and of his beneficial interest. (FAC ¶¶ 13, 33.)

Plaintiff's father died on September 27, 2025. Three days later, Plaintiff called the San Diego County Sheriff's Department ("SDSO") for protection against what he describes

as the Mazzola parties' assaults and a "pretextual 'water leak' scheme designed to break into his private room and access Trust documents." (FAC ¶¶ 17, 20.) Plaintiff alleges the officers refused to recognize his legal authority, credited Mazzola's narrative, and used coercive pressure to accomplish an illegal eviction, although they conceded on scene that they could not forcibly remove him from the property. (*Id.* ¶ 22.) He claims Therapist Basile labeled him "dangerous" and in a "mental health crisis" without clinical assessment, told his mother she "needed to get protection" from him, recommended a restraining order, and advised recording all conversations. (*Id.* ¶ 10.) Plaintiff also claims Therapist Basile testified against Plaintiff at the April 17, 2026 trial on the elder-abuse restraining order petition filed by Mazzola in his mother's name. (*Id.* ¶ 37.) Specifically, Plaintiff claims Therapist Basile testified that the conflict over Plaintiff's mother concerned "the money that is tearing this family apart regarding some documents," and further alleges that Therapist Basile failed "to report or assess the suspected undue influence unfolding in his presence." (*Id.* ¶¶ 37, 64.) Plaintiff alleges he was forced to leave the Trust-owned property, even though he was a lawful resident. (FAC ¶ 25.)

After the alleged eviction, Plaintiff called the SDSO to file an elder-abuse report against the Mazzola parties. He alleges Deputy Padilla refused to accept the report and hung up. (FAC ¶¶ 28–29.) Plaintiff alleges this refusal was repeated across later attempts and became a standing directive conveyed to him by SDSO dispatch. SDSO also refused his request for a welfare check on his mother. (*Id.*)

The FAC asserts nine causes of action as follows:

1. <u>Count 1</u>: 42 U.S.C. § 1983, Fourth Amendment Unlawful Seizure of Person and Property (Against Deputy Padilla, Deputy Rost, Therapist Basile, and Doe Officers 4–10);
2. <u>Count 2</u>: 42 U.S.C. § 1983, Fourteenth Amendment Procedural Due Process—Wrongful Eviction (Against Deputy Padilla, Deputy Rost, Therapist Basile, and Doe Officers 4–10);

3. Count 3: 42 U.S.C. § 1983, Fourteenth Amendment Interference with Familial Association (Against Deputy Padilla, Deputy Rost, Therapist Basile, and Doe Officers 4–10);

4. Count 4: 42 U.S.C. § 1983, First Amendment Retaliation (Against Deputy Padilla, Deputy Rost, and Therapist Basile);

5. Count 5: Municipal Liability, *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) ("*Monell* liability") (Against the County of San Diego);

6. Count 6: *Monell* Liability (Against the City of San Marcos);

7. Count 7: Breach of Mandatory Duty, Government Code § 815.6 and Welfare and Institutions Code §§ 15630, 15640, and 15763 (Against the County of San Diego, the City of San Marcos, Deputy Padilla, and Therapist Basile);

8. Count 8: California Civil Code § 52.1, Bane Act (Against all Defendants); and

9. Count 9: Professional Negligence/Malpractice (Against Therapist Basile).

(FAC ¶¶ 40–70.) Plaintiff also alleges compliance with the Government Claims Act, pleading that he timely presented claims to the County and the City and that both rejected them before this action was commenced. (*Id.* ¶ 5.)

**C. Analysis**

**1. Count 1: 42 U.S.C. § 1983, Fourth Amendment Unlawful Seizure of Person and Property (Against Defendants Deputy Padilla, Deputy Rost, Therapist Basile, and Doe Officers 4–10)**

A "seizure" of a person occurs under the Fourth Amendment when the officer, "by means of physical force or show of authority has in some way restrained the liberty of a citizen." *United States v. Orman*, 486 F.3d 1170, 1175 (9th Cir. 2007). The Supreme Court has noted that a seizure takes place when a person voluntarily surrenders after learning of a warrant or threat of arrest. *Albright v. Oliver*, 510 U.S. 266, 271 (1994) ("[S]urrender to the State's show of authority constituted a seizure for purposes of the Fourth Amendment."). Under the Fourth Amendment, an individual's "seizure" occurs

only when physical force or show of authority results in restrained freedom of movement. *See United States v. Smith*, 633 F.3d 889 (9th Cir. 2011).

A "seizure" of property occurs when "there is some meaningful interference with an individual's possessory interests in that property." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). In addition, "at the very core" of the Fourth Amendment "stands the right of a man to retreat into his own home." *Soldal v. Cook Cnty., Ill.*, 506 U.S. 56, 61 (1992) (quoting *Silverman v. United States*, 365 U.S. 505, 511 (1961)); *see also Oliver v. United States*, 466 U.S. 170, 178–79 (1984); *Wyman v. James*, 400 U.S. 309, 316 (1971); *Payton v. New York*, 445 U.S. 573, 601 (1980).

An unlawful eviction by government officials can plausibly be a "seizure" of property protected by the Fourth Amendment. *See Soldal*, 506 U.S. at 72 (applying the Fourth Amendment to an allegedly unlawful eviction of motor home where offending officers physically seized the home); *Herrera v. City of Palmdale*, No. CV169453MWFFFMX, 2020 WL 6064015, at *7 (C.D. Cal. July 6, 2020) (eviction from a motel not owned by Plaintiff is still a "seizure" subject to Fourth Amendment analysis).

Although an eviction can be a seizure, it is not at all clear from the FAC that Plaintiff was in fact evicted. Plaintiff alleges that the officers acknowledged at the scene that they could not forcibly remove Plaintiff. (FAC ¶ 22.) Although the presence of uniformed officers may be a "show of authority," Plaintiff has failed to allege that any Defendant threatened to arrest or detain him if he refused to leave. Although Plaintiff alleges he was "forced to leave" the property, the FAC does not allege that any Defendant compelled his departure by force, threat, or legal process; it alleges instead that Plaintiff left after the responding deputies and his mother told him to go, and after Therapist Basile made recommendations to his mother that Plaintiff found offensive. (*Id.* ¶¶ 21–25.) Finally, although Plaintiff alleges Deputy Rost was among the deputies dispatched to the scene, he does not allege any conduct by her that caused him to leave the property. (*Id.* ¶¶ 8, 11, 21–25.)

Regarding Plaintiff's claims for seizure of property, Plaintiff fails to allege he has a "possessory interest" in the property left behind. *Jacobsen*, 466 U.S. at 113. Plaintiff alleges his parents Gordon and Karen Murrey—who created the Trust—had invited him to stay at the Trust-owned home and even provided him house keys, mailbox key, safe combinations, and a private room with a secure entry code. (FAC ¶¶ 13–14, 44.) However, being given permission to stay as a guest in a unit does not grant Plaintiff a possessory interest in the property. Unlike a tenant, for example, Plaintiff did not sign a rental agreement. *See, e.g., Porto v. City of Newport Beach*, No. SACV 11-00180-DOC MLG, 2011 WL 2470128, at *11 (C.D. Cal. May 20, 2011), *report and recommendation adopted*, No. SACV 11-00180-DOC, 2011 WL 2462555 (C.D. Cal. June 21, 2011), *aff'd*, 509 F. App'x 665 (9th Cir. 2013) (reasoning "Plaintiff had no possessory interest in the unit he occupied at 710 Orchid Avenue because he was not a tenant" and subsequently finding Plaintiff's Fourth Amendment seizure of property claim fails); *cf. Forte v. Hyatt Summerfield Suites, Pleasanton*, No. C 11-2568 CW, 2012 WL 6599724, at *4 (N.D. Cal. Dec. 18, 2012) ("[A] hotel does not grant *all* of its guests a possessory interest in their rooms merely by granting such an interest to certain, individual tenants.").

Even regarding property in which Plaintiff does allege a protected interest (i.e., his "personal property"), Plaintiff alleges he was permitted to return to the Trust-owned home to retrieve it. (FAC ¶¶ 26, 32.) And although Plaintiff alleges he lost his "fiduciary positions" and "$2,000,000 inheritance" as a result of Defendants' conduct, the FAC alleges that those losses were effected by instruments executed by private parties and by a restraining order issued by the state court—not by any seizure of property by Defendants. (*Id.* ¶¶ 33, 39, 42.)

As such, the Court **DISMISSES WITHOUT PREJUDICE** Plaintiff's Fourth Amendment seizure of person and property claim in its entirety against Defendants Deputy Padilla, Deputy Rost, Therapist Basile, and Doe Officers 4–10 (Count 1).

**2. <u>Count 2</u>: 42 U.S.C. § 1983, Fourteenth Amendment Procedural Due Process—Wrongful Eviction (Against Defendants Deputy Padilla, Deputy Rost, Therapist Basile, and Doe Officers 4–10)**

Plaintiff claims Defendants Deputy Padilla, Deputy Rost, Therapist Basile, and Doe Officers 4–10 wrongfully evicted him from the Trust-owned home in violation of Plaintiff's procedural due process rights under the Fourteenth Amendment. (FAC ¶¶ 43–46.)

The Due Process Clause of the Fourteenth Amendment guarantees that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend. XIV. Procedural due process claims are examined under a two-part analysis. First, the court must determine whether the interest at stake is a protected liberty or property right under the Fourteenth Amendment. Only after identifying such a right does the Court consider whether the deprivation of that interest contravened notions of due process. *See Ky. Dep't of Corrs. v. Thompson*, 490 U.S. 454, 460 (1989). "Property interests are not created by the Constitution[.]" *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985). Instead, "they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law[.]" *Id.* (internal quotation marks, ellipsis, and citation omitted).

Here, Plaintiff has failed to adequately allege a protected property interest in the Trust-owned home under the Fourteenth Amendment because Plaintiff has not alleged that the Trust-owned home was assigned to him "for [his] exclusive occupancy . . . with the capacity and right to exclude others from entering." *Shapiro v. Willowbrook Home LLC*, No. SACV 13-1478-JAK JEM, 2014 WL 3706703, at *6 (C.D. Cal. June 23, 2014), *report and recommendation adopted*, No. SACV 13-1478-JAK JEM, 2014 WL 3716214 (C.D. Cal. July 23, 2014) (finding plaintiff failed to allege a procedural due process violation for wrongful eviction where the complaint did not allege a conventional landlord and tenant relationship); *see also Martinez v. Sonoma-Cutrer Vineyards*, 577 F. Supp. 454, [PINCITE] (N.D. Cal. 1983) ("[P]laintiffs are unable to establish the existence of a

protected property interest" in the case of premises "remaining under the supervision and control of the [alleged sublessor]"). As discussed *supra* § II.C.1, residing in the Trust-owned home with his parents' (the Trust's settlors') permission and being given keys does not mean Plaintiff was assigned "exclusive occupancy" or had "the capacity and right to exclude others from entering." *Shapiro*, 2014 WL 3706703, at *6. Also, for the same reasons discussed *supra* § II.C.1, Plaintiff does not allege any Defendant deprived Plaintiff of any other purported property interests. Nor does the FAC allege that any Defendant compelled Plaintiff's departure by force, threat, or legal process.

Thus, the Court **DISMISSES WITHOUT PREJUDICE** Plaintiff's Fourteenth Amendment Procedural Due Process claim for wrongful eviction against Defendants Deputy Padilla, Deputy Rost, Therapist Basile, and Doe Officers 4–10 (Count 2).

**3. <u>Count 3</u>: 42 U.S.C. § 1983, Fourteenth Amendment Interference with Familial Association (Against Defendants Deputy Padilla, Deputy Rost, Therapist Basile, and Doe Officers 4–10)**

Children have a constitutionally protected interest in associating with their parents, free from official deprivation. *See Lemire v. Cal. Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1075 (9th Cir. 2013) ("Parents and children may assert Fourteenth Amendment substantive due process claims if they are deprived of their liberty interest in the companionship and society of their child or parent through official conduct."). This right to familial association also applies to the relationship between adult children and their parents. *See Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1106 (9th Cir. 2014). For liability to attach in a due process claim based on familial association, the official conduct depriving a plaintiff of this right must "shock the conscience," with a purpose to harm "unrelated to legitimate law enforcement objectives." *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008).

Here, Plaintiff alleges he was verbally coerced by Defendants Deputy Padilla and Doe Officers 4–10 to leave the premises of the Trust-owned home and his mother Karen Murrey. (FAC ¶¶ 47–49.) According to Plaintiff, a uniformed deputy and Therapist Basile raised the option of a Temporary Restraining Order ("TRO") to Plaintiff's mother and the

Mazzolas to evict Plaintiff from the Trust-owned home and to separate Plaintiff from his mother—despite his mother's protests otherwise. (*Id.* ¶¶ 9, 10, 23, 34.)

The facts of this case do not rise to the level of conduct that "shocks the conscience." Even though Defendants may have suggested a TRO to the Mazzolas, Plaintiff fails to allege that Defendants did so with a purpose to harm "unrelated to legitimate law enforcement objectives," particularly where those Defendants could have believed Plaintiff's mother was in immediate danger. *Porter*, 546 F.3d at 1137; *see also Caldwell v. LeFaver*, 928 F.2d 331, 333 (9th Cir. 1991) (a state agency may remove children from their parents' custody in an emergency situation if the children are subject to immediate or apparent danger or harm).

Additionally, Plaintiff apparently left the premises of the Trust-owned home and his mother voluntarily—even after Defendants verbally represented that they could not force him off the premises. (*See, e.g.,* FAC ¶¶ 22, 25.) Moreover, the TRO to restrain Plaintiff from seeing his mother was eventually filed by private actors (the Mazzolas) and issued by the state court. (*Id.* ¶ 33.) Put differently, Plaintiff fails to allege any state action taken by Defendants in this case that directly resulted in the separation between Plaintiff and his mother. *Cf. Lamkin v. Hutchinson*, No. 2:23-CV-00273-BLW, 2024 WL 5200845, at *7 (D. Idaho Dec. 23, 2024) (citing *NCAA v. Tarkanian*, 488 U.S. 179, 191 (1988)) ("Section 1983 does not provide a remedy for actions by private actors.").

For the reasons above, the Court **DISMISSES WITHOUT PREJUDICE** Plaintiff's Fourteenth Amendment Interference with Familial Association claim against Deputy Padilla, Deputy Rost, Therapist Basile, and Doe Officers 4–10 (Count 3).

**4. <u>Count 4</u>: 42 U.S.C. § 1983, First Amendment Retaliation (Against Defendants Deputy Padilla, Deputy Rost, and Therapist Basile)**

Plaintiff claims he was exercising his First Amendment rights when calling 911, asserting his "legal authority" (presumably as a co-Trustee), and attempting to file an elder-abuse report. (FAC ¶¶ 50–52, 67.) Then, "[i]n direct retaliation the officers labeled plaintiff 'dangerous', advised the Mazzola parties to seek a TRO against the very person

who had called for help, instructed them to call 911 if plaintiff returned to his own home and deputy Padilla refused to accept plaintiff's elder abuse report and hung up on him." (*Id.* ¶ 51.)

However, Plaintiff does not have a constitutionally protected right "to have police investigate his report in a particular way." *Whiting v. Walmart Inc.*, No. EDCV222121JWHJEM, 2023 WL 2870840, at *3 (C.D. Cal. Mar. 8, 2023) (collecting cases), *report and recommendation adopted*, No. EDCV222121JWHJEM, 2023 WL 2868837 (C.D. Cal. Apr. 10, 2023). Thus, Plaintiff's attempts to file an elder-abuse report are not constitutionally protected by the First Amendment; and Defendants' actions allegedly in response to Plaintiff's requests (i.e., refusal to enter the report or entering a "standing directive") do not constitute retaliation.

Moreover, even if Plaintiff's 911 calls and assertion of "legal authority" could be protected by the First Amendment, Plaintiff fails to allege that any Defendant engaged in any constitutionally prohibited action in response to Plaintiff's 911 calls or assertion that he has legal authority as a co-successor Trustee. *See, e.g., Penrod v. City of Murrieta*, No. CV1702116MWFSPX, 2018 WL 6112631, at *5 (C.D. Cal. Feb. 26, 2018) (quoting *O'Brien v. Welty*, 818 F.3d 920, 932 (9th Cir. 2016)) (A First Amendment retaliation claim requires the following elements: "(1) [plaintiff] was engaged in a constitutionally protected activity, (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity[,] and (3) the <u>protected activity was a substantial or motivating factor in the defendant's conduct</u>.") (emphasis added).

For the reasons above, the Court **DISMISSES WITHOUT PREJUDICE** Plaintiff's First Amendment retaliation claim against Defendants Deputy Padilla, Deputy Rost, and Therapist Basile (Count 4).

### 5. <u>Counts 5 and 6</u>: *Monell* Liability (Against the County of San Diego and City of San Marcos)

Plaintiff claims the County of San Diego is liable under *Monell* for failure to train and a *de facto* custom of pre-aligning with one party in family disputes, and on a theory of

ratification by the Sheriff as final policymaker (FAC ¶¶ 7, 54–57), and that the City of San Marcos is liable because it contracts with SDSO as its *de facto* police department and owns/maintains the San Marcos Sheriff's Station (*id.* ¶¶ 8, 60).

*Monell* liability requires an underlying constitutional violation. *Dixon v. Wallowa Cnty.*, 336 F.3d 1013, 1021 (9th Cir. 2003); *see also Murray v. City of Carlsbad*, No. 08-2121, 2010 WL 2839477, at *8 (S.D. Cal. July 19, 2010). Because Plaintiff fails to sufficiently allege any constitutional violations, Plaintiff has also not sufficiently alleged *Monell* liability against Defendants County of San Diego and City of San Marcos.

For the reasons above, the Court **DISMISSES WITHOUT PREJUDICE** Plaintiff's *Monell* liability claim against Defendants County of San Diego and City of San Marcos (Counts 5 and 6).

**6. <u>Count 7</u>: Breach of Mandatory Duty, Government Code § 815.6 and Welfare and Institutions Code §§ 15630, 15640, and 15763 (Against the County of San Diego, the City of San Marcos, Deputy Padilla, and Therapist Basile)**

Plaintiff claims Defendants County of San Diego, City of San Marcos, Deputy Padilla, and Therapist Basile violated California Government Code § 815.6 and California Welfare and Institutions Code §§ 15630, 15640, and 15763 by: (1) Deputy Padilla's refusal to accept Plaintiff's elder-abuse report; (2) responding deputies' refusal to conduct a welfare check on his mother; (3) Therapist Basile's failure to report or assess the suspected undue influence unfolding in his presence, despite testifying that he understood the conflict to concern "the money that is tearing this family apart regarding some documents"; and (4) the County's Adult Protective Services program's non-response to Plaintiff's reports. (FAC ¶¶ 30, 37, 63–65.)

**i. California Welfare and Institutions Code §§ 15630, 15640, and 15763**

"[A] private party can sue for violation of a statute only where the statute in question allows it." *Mayron v. Google LLC*, 54 Cal. App. 5th 566, 571 (2020) (citing *Lu v. Hawaiian*

*Gardens Casino, Inc.*, 50 Cal. 4th 592, 596 (2010)). "If the Legislature intended a private right of action, that usually ends the inquiry. If the Legislature intended there be no private right of action, that usually ends the inquiry. If we determine the Legislature expressed no intent [as to a private right of action] either way, directly or impliedly, there is no private right of action." *Vasquez v. Solo 1 Kustoms, Inc.*, 27 Cal. App. 5th 84, 91 (2018), *as modified* (Sept. 11, 2018) (quoting *Animal Legal Def. Fund v. Mendes*, 160 Cal. App. 4th 136, 142 (2008)).

Sections 15630, 15640, and 15763 of the California Welfare and Institutions Code do not expressly provide a private right of action. Indeed, Section 15630.1(g)(1) of the California Welfare and Institutions Code even explicitly states: "No action shall be brought under this section [Section 15630] by any person other than the Attorney General, district attorney, or county counsel." Neither Section 15640 nor Section 15763 of the California Welfare and Institutions Code has text indicating an intent either way.

Since Sections 15630, 15640, and 15763 of the California Welfare and Institutions Code do not expressly provide a private right of action, the Court dismisses Plaintiff's claims under those provisions against Defendants County of San Diego, City of San Marcos, Deputy Padilla, and Therapist Basile.

**ii. California Government Code § 815.6**

To determine if liability for a mandatory duty may be imposed upon a public entity under Section 815.6 of the California Government Code: (1) an enactment must impose a mandatory duty; (2) <u>the enactment must intend to protect against the kind of risk of injury suffered by the plaintiff</u>; and (3) breach of the mandatory duty must be a proximate cause of the injury suffered. *See* Cal. Gov't Code § 815.6; *Dep't of Corps. v. Super. Ct.*, 153 Cal. App. 4th 916, 922 (2007).

First, California Government Code § 815.6 applies to public entities, not individuals. *See* Cal. Gov't Code § 815.6. Thus, Plaintiff cannot state a claim under Section 815.6 of the California Government Code against Defendants Deputy Padilla and Therapist Basile.

Second, Plaintiff cannot state claims under California Government Code § 815.6 against Defendants County of San Diego and the City of San Marcos for Defendant Deputy Padilla's "refus[al] to accept plaintiff's elder abuse report" and Therapist Basile's "fail[ure] to report or assess the suspected undue influence" the Mazzolas purportedly exerted over Plaintiff's mother.

Even if there could be a private right of action under Sections 15630, 15640, and 15763 of the California Welfare and Institutions Code—which would permit Plaintiff to bring a claim against public entities for Defendants Deputy Padilla and Therapist Basile's actions—those Sections do not impose a "mandatory duty" for mandated reporters to accept Plaintiff's elder-abuse report or to report elder abuse merely because a private citizen suspects it.

Sections 15630 and 15640 of the California Welfare and Institutions Code impose a duty to make reports, not to receive them; and only upon mandated reporters' <u>own</u> knowledge, not upon a private citizen's. *See, e.g.,* Cal. Welf. & Inst. Code § 15630(b) ("A mandated reporter who, <u>in their professional capacity</u>, or within the scope of their employment, has observed or has knowledge of an incident that reasonably appears to be physical abuse . . . <u>shall report</u> the known, suspected, or alleged instance of abuse by telephone or through a confidential internet reporting tool, as authorized by Section 15658, immediately or as soon as practicably possible."); Cal. Welf. & Inst. Code § 15640(b) ("If [a] . . . local law enforcement agency . . . receiving a report of known or suspected elder or dependent adult abuse determines, <u>pursuant to its investigation</u> . . . [the] local law enforcement agency . . . shall immediately, or as soon as practically possible, <u>report this information to the appropriate licensing agency</u>.")). Additionally, Section 15763(c) of the California Welfare and Institutions Code explicitly states: "A county shall not be required to report or respond to a report . . . that involves danger to an elder."

Thus, the Court also dismisses Plaintiff's claim against Defendants County of San Diego, City of San Marcos, Deputy Padilla, and Therapist Basile under Section 815.6 of the California Government Code.

* * *

Since the Welfare and Institutions Code sections underlying Plaintiff's claim provide no private right of action, and California Government Code § 815.6 neither reaches the individual Defendants nor imposes a mandatory duty those sections do not themselves create, the Court **DISMISSES WITH PREJUDICE** Plaintiff's claim under California Government Code § 815.6 and California Welfare and Institutions Code §§ 15630, 15640, and 15763 against Defendants County of San Diego, City of San Marcos, Deputy Padilla, and Therapist Basile (Count 7).

**7. <u>Count 8</u>: California Civil Code § 52.1, Bane Act (Against all Defendants)**

The Tom Bane Civil Rights Act ("Bane Act"), Cal. Civ. Code § 52.1, imposes liability on a person who "interferes by threat, intimidation, or coercion, or attempts to interfere by threat, intimidation, or coercion, with the exercise" of an individual's state or federal right. Cal. Civ. Code § 52.1(b). A Bane Act claim requires the following: (1) the defendant intentionally interfered or attempted to interfere with a state or federal constitutional or legal right, and (2) the interference or attempted interference was by threats, intimidation, or coercion. *Allen v. City of Sacramento*, 234 Cal. App. 4th 41, 67 (2015) (citing *Jones v. Kmart Corp.*, 17 Cal. 4th 329, 334 (1998)). To prevail on a Bane Act claim, a plaintiff must establish the defendant had a "specific intent" to violate his rights. *Reese v. Cnty. of Sacramento*, 888 F.3d 1030, 1043 (9th Cir. 2018).

Since Plaintiff has failed to allege that any Defendant has interfered or attempted to interfere with Plaintiff's "state or federal constitutional or legal right," *supra* §§ II.C.1–6, 8, Plaintiff also fails to state a Bane Act claim. *See Allen*, 234 Cal. App. 4th at 67.

Thus, the Court **DISMISSES WITHOUT PREJUDICE** Plaintiff's Bane Act claim against all Defendants (Count 8).

**8. <u>Count 9</u>: Professional Negligence/Malpractice (Against Therapist Basile)**

"A key element of any action for professional malpractice is the establishment of a duty by the professional to the claimant. Absent duty there can be no breach and no negligence." *Goldberg v. Frye*, 217 Cal. App. 3d 1258, 1267 (1990).

Whether a defendant owes a duty of care is a question of law that is determined on a case-by-case basis. *Marlene F. v. Affiliated Psychiatric Med. Clinic, Inc.*, 48 Cal. 3d 583, 588 (1989); *Mintz v. Blue Cross of Cal.*, 172 Cal. App. 4th 1594, 1610 (2009). A physician's duty of care to a patient does not arise until a physician-patient relationship is established. *Burgess v. Super. Ct.*, 2 Cal. 4th 1064, 1075 (1992). " '[T]he relationship gives rise to the duty of care.' " *Burgess*, 2 Cal. 4th at 1075 (internal citations omitted). Absent this special relationship, a physician is under no duty to take affirmative action to assist or protect another, " 'no matter how great the danger in which the other is placed, or how easily he could be rescued.' " *Armato v. Baden*, 71 Cal. App. 4th 885, 895 (1999); *see also Agnew v. Parks*, 172 Cal. App. 2d 756, 764 (1959).

Importantly, "[l]iability for malpractice arises where there is a relationship of physician-patient <u>between the plaintiff and the defendant doctor</u>; the relationship gives rise to the duty of care." *Burgess*, 2 Cal. 4th at 1075 (quoting 6 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 776, p. 116) (emphasis added). Here, though Plaintiff alleges that Defendant Therapist Basile had determined Plaintiff is dangerous to Plaintiff's mother and had failed to properly assess Plaintiff's mother's cognitive impairment (FAC ¶¶ 69–70), Plaintiff does not allege that Defendant Therapist Basile ever entered into a professional relationship with Plaintiff. That conclusion is reinforced by Plaintiff's own allegation that Therapist Basile testified under oath at the April 17, 2026 elder-abuse restraining order trial recounted no clinical assessment of anyone. (*Id.* ¶¶ 3, 37.)

Thus, the Court **DISMISSES WITHOUT PREJUDICE** Plaintiff's professional negligence/malpractice claim against Defendant Therapist Basile (Count 9).

**D. Conclusion**

For the reasons above, the Court **DISMISSES WITHOUT PREJUDICE** Plaintiff's claims under Counts 1 (Fourth Amendment Unlawful Seizure of Person and

Property), 2 (Fourteenth Amendment Procedural Due Process—Wrongful Eviction), 3 (Fourteenth Amendment Interference with Familial Association), 4 (First Amendment Retaliation), 5 (*Monell* Liability against Defendant County of San Diego), 6 (*Monell* Liability against Defendant City of San Marcos), 8 (Bane Act), and 9 (Professional Negligence/Malpractice). The Court **DISMISSES WITH PREJUDICE** Plaintiff's claim under Count 7 (Breach of Mandatory Duty).

## III. CONCLUSION

For the reasons above, the Court **GRANTS** Plaintiff's Motion for Leave to Proceed in Forma Pauperis. (ECF No. 2.) However, the Court **DISMISSES** Plaintiff's FAC in its entirety. (ECF No. 20.)

The Court **DISMISSES WITHOUT PREJUDICE** Plaintiff's causes of action listed below:

1. Count 1: 42 U.S.C. § 1983, Fourth Amendment Unlawful Seizure of Person and Property (Against Deputy Padilla, Deputy Rost, Therapist Basile, and Doe Officers 4–10);
2. Count 2: 42 U.S.C. § 1983, Fourteenth Amendment Procedural Due Process—Wrongful Eviction (Against Deputy Padilla, Deputy Rost, Therapist Basile, and Doe Officers 4–10);
3. Count 3: 42 U.S.C. § 1983, Fourteenth Amendment Interference with Familial Association (Against Deputy Padilla, Deputy Rost, Therapist Basile, and Doe Officers 4–10);
4. Count 4: 42 U.S.C. § 1983, First Amendment Retaliation (Against Deputy Padilla, Deputy Rost, and Therapist Basile);
5. Count 5: Municipal Liability, *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) ("*Monell* liability") (Against the County of San Diego);
6. Count 6: *Monell* Liability (Against the City of San Marcos);
7. Count 8: California Civil Code § 52.1, Bane Act (Against all Defendants); and
8. Count 9: Professional Negligence/Malpractice (Against Therapist Basile).

However, the Court **DISMISSES WITH PREJUDICE** Plaintiff's cause of action under Count 7, Breach of Mandatory Duty, Government Code § 815.6 and Welfare and Institutions Code §§ 15630, 15640, and 15763 (against Defendants County of San Diego, the City of San Marcos, Deputy Padilla, and Therapist Basile).

If Plaintiff wishes to file a Second Amended Complaint correcting deficiencies in the claims dismissed without prejudice, Plaintiff must do so by **September 4, 2026**.

**IT IS SO ORDERED.**

**DATED: August 24, 2026**

**Hon. Cynthia Bashant, Chief Judge**
**United States District Court**